IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TITAN INDEMNITY COMPANY,<br><br>  Plaintiff,<br><br>  v.<br><br>A PLUS TOWING, JOSE HERMOSILLO,<br>FERNANDO HERMOSILLO, AND<br>KATRINA RAPP,<br><br>  Defendants.<br>_____/ | No. C 14-03864 WHA<br><br>**ORDER RE SUMMARY JUDGMENT** |

**INTRODUCTION**

In this declaratory judgment insurance action, plaintiff moves for summary judgment. To the extent stated herein, plaintiff's motion is **GRANTED**.

**STATEMENT**

In this action, plaintiff Titan Indemnity Company seeks a declaratory judgment that it has no duty to defend or indemnify its insureds A Plus Towing, a general partnership, Jose Hermosillo Sr., or Fernando Hermosillo in an underlying insurance action. The case stems from a car accident that occurred in August 2012. On the day of the incident, Daniel Roberson, who is not a party herein, went to the parking lot of A Plus Towing in Santa Rosa to pick up a trailer he had agreed to purchase. Roberson attached the trailer to his truck and towed it off of the A Plus lot. After he had left the lot, and was driving down the road at approximately 28 miles-per-hour, the trailer suddenly detached from Roberson's truck and struck defendant Katrina Rapp, a pedestrian walking nearby. She suffered serious injuries. It is not clear from the record how

long Roberson had been driving before the trailer detached from his truck (Plaintiff's Exh. 5, Roberson Dep.).

Two months before the accident, Jose Hermosillo Sr. had purchased a California business auto insurance policy from Titan. The named insureds were A Plus Towing, Jose Sr., and his son, Fernando. The policy covered any damages resulting from the ownership, maintenance, or use of a "covered auto," which included "trailers you own with a bed measuring not more than 12 feet in length designed primarily for travel on public roads" (Plaintiff's Exh. 15, Insurance Policy). The parties agree that the trailer at issue contained a bed measuring not more than 12 feet in length and was designed primarily for travel on public roads. The dispute surrounds whether any named insured (Jose Sr., Fernando, or A Plus Towing) owned the trailer at the time in question.

According to the witness testimony, Jose Hermosillo Jr. — Jose Sr.'s son, Fernando's brother, and not a named insured — owned the trailer prior to the day of the accident. He bought the trailer in October 2008 and stored it at the A Plus lot, which contained several cars and trailers. Jose Jr. did not obtain any title or registration documents for the trailer when he bought it. Jose Jr. moved to Mexico in 2009, where he currently resides, leaving the trailer in the A Plus lot. Jose Jr. testified that he never sold the trailer to his father or brother and maintained ownership of it up until the day of the accident (Plaintiff's Exh. 2, Jose Jr. Dep. at 18–19, 23, 32–33, 60–61).

Several weeks before the accident, Roberson, a family friend of the Hermosillos, noticed the trailer in the A Plus lot and approached Fernando about purchasing it. Fernando told Roberson that the trailer belonged to his brother, Jose Jr., and that his permission would be needed before any sale. Fernando contacted Jose Jr. to tell him that someone wanted to buy the trailer and Jose Jr. agreed to sell it for either $400 or $500, to be paid in two installments, and authorized Fernando to complete the sale. Jose Sr. testified that while he was aware of the trailer on the A Plus lot, he did not know who owned it (Plaintiff's Exhs. 2, 3, 4, 6; Jose Jr., Fernando, Jose Sr., and Roberson Deps.).

On the day of the accident, Roberson called Fernando to tell him he would be coming by to pick up the trailer. When Roberson arrived, he hitched the trailer to his truck without any assistance. After driving off, the trailer came loose and hit Rapp. Roberson and Fernando both testified that they believed Roberson owned the trailer once he'd hitched it to his truck (Plaintiff's Exhs. 3, 6; Fernando and Roberson Deps.).

Several months after the accident, Rapp sued Roberson, Fernando, and A Plus Towing in Sonoma County Superior Court for negligently allowing the allegedly defective trailer to be towed. Fernando tendered the defense to Titan pursuant to the insurance policy. Titan denied coverage, a decision which Fernando and A Plus did not contest. Rapp settled with Roberson for $300,000. Fernando and Jose Sr. filed for Chapter 13 bankruptcy in 2013, wherein the bankruptcy court found that their exposure to Rapp was limited to their insurance policies.

After dismissing the first action without prejudice, in April 2014, Rapp filed a second action against A Plus Towing, Fernando, and Jose Sr., claiming they owned the trailer and were thus also liable for Rapp's injuries. Titan then filed the instant suit against defendants Rapp, A Plus, Fernando, and Jose Sr., seeking a declaratory judgment that it is not required to defend or indemnify its insureds in this second action because they did not own the trailer at issue when the accident occurred. Despite being properly served, neither A Plus, Fernando, nor Jose Sr. answered the complaint and the Clerk entered a default against them (Dkt. No. 41). A "Notice Regarding Default and Default Judgment" then issued (Dkt. No. 42), but Titan has not yet moved for a default judgment against these defendants. Rapp is the only defendant who answered the complaint and opposes Titan's motion for summary judgment.

This orders follows full briefing and oral argument.

**ANALYSIS**

Under Rule 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

3

judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986).

Here, the parties agree that the sole issue is whether a named insured — Jose Sr., Fernando, or A Plus — "owned" the trailer at the moment the accident occurred. Defendant Rapp's brief states (Opp. at 1): "The outcome of this motion, and indeed the case itself, turns on the interpretation of the word 'own' as it is used in the Policy." Plaintiff agrees (Reply at 4): "the only manner in which coverage under the Titan Policy can be triggered for the underlying accident is if the Trailer was owned by a Titan insured at the time of Accident." Due to this concession by the parties, this order need not consider the issue of negligence or who owned the trailer at any time other than that of the accident.

In sum, if Jose Jr. owned the trailer while it sat in the A Plus lot, such that Jose Sr., Fernando, or A Plus never owned it, then Titan would not be required to indemnify or defend under the insurance policy. Moreover, if ownership of the trailer had already transferred to Roberson when the accident occurred, then the policy would not be implicated.

The parties agree that no records exist as to the ownership of the subject trailer. However, "[c]ase law makes clear that DMV records are not conclusive on the issue of ownership. When warranted by the specific facts, the court will look 'behind' the transfer to see who, in fact, is the true owner." *Liberty Mut. Fire. Ins. Co. v. McKenzie*, 88 Cal. App. 4th 681, 687 (Cal. Ct. App. 2001). The California Court of Appeal went on to define vehicle ownership in the insurance context, when documentation is insufficient, as follows:

> Liberty's reliance on statutory and decisional law to support the claim that record title equates with ownership is unavailing in this context. It is true those authorities define "owner" as the holder of record legal title. However, that principle does not resolve this case because it presupposes a valid registration or transfer of title, something which did not occur here. The real issue is whether McKenzie owned the vehicle notwithstanding that "transfer." Other sources of law provide direction in determining that dispute. For instance, Civil Code section 654 states: "The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others. In this Code, the thing of which there may be ownership is called property." And Black's Law Dictionary (7th ed. 1999) page 1130, defines "own" as: "To have or possess as property; to have legal title to."

4

*Id*. at 688–89. California Civil Code Section 679 defines property ownership as follows: "The ownership of property is absolute when a single person has the absolute dominion over it, and may use it or dispose of it according to his pleasure, subject only to general laws." Furthermore, the California Court of Appeal defined ownership in the vehicle context as such: "An 'owner' is one who exercises the incidents of ownership — dominion, control, right, interest, and title." *Savnik v. Hall*, 74 Cal. App. 4th 733, 740 (Cal. Ct. App. 1999).

In our case, there is no genuine dispute of material fact as to whether any named insured on the Titan policy ever owned the trailer in question. All parties that were deposed emphatically testified that Jose Jr. owned the trailer prior to the sale to Roberson and that neither Jose Sr., Fernando, or A Plus ever owned it.

Jose Jr. testified that he bought the trailer for $400 in 2008, while residing in the United States, and asked Fernando if he could store it on the A Plus lot. In 2012, while Jose Jr. resided in Mexico, Fernando called Jose Jr. to tell him that someone had expressed interest in purchasing the trailer. Jose Jr. authorized Fernando to sell the trailer for as much as he could get. Specifically, when describing his 2012 conversation with Fernando, Jose Jr. testified:

> Q. At the time you authorized Fernando to sell the trailer were you still the owner of it?
>
> A. Yes.

In sum, Jose. Jr. testified that he owned the trailer during the entire period it was stored on the A Plus lot and that it had never been owned by Jose Sr., Fernando, or A Plus (Plaintiff's Exh. 2; Jose Jr. Dep. at 41–42, 48–49, 60).

Fernando also testified that Jose Jr. owned the trailer up through the sale to Roberson. In his deposition, Fernando reiterated the same story Jose Jr. told — that Jose Jr. bought the trailer, asked Fernando if he could store it at the A Plus lot, and a friend of Jose Jr.'s dropped the trailer off at the lot, where it remained until the accident. Fernando further testified that while the trailer sat on the lot, neither he nor anyone at A Plus ever used it. His only interaction with it was that he refilled the tires about every six months, and moved it when the business changed locations, but that no maintenance had been performed on the trailer. In 2012, Roberson approached Fernando about the trailer, who responded that Jose Jr. owned it, and that he would

5

need Jose Jr.'s permission to sell it. Roberson confirmed this series of events during his deposition. As stated above, Fernando called Jose Jr., who gave his authorization to sell (Defendant's Exh. 2; Fernando Dep. at 8–9, 13).

Jose Sr. also testified that neither he nor anyone at A Plus owned the trailer. Although he had noticed it on the lot, Jose Sr. did not know who owned the trailer, where it came from, and never did anything with it. He testified (Defendant's Exh. 5; Jose Jr. Dep. at 18–19): "It never interested me to ask about it."

Jose Jr.'s ownership of the trailer is further supported by the fact that Fernando needed his authorization before selling the trailer to Roberson. All three witnesses (Jose Jr., Fernando, and Roberson) testified that when Roberson approached Fernando about the trailer, Fernando responded that Jose Jr. owned it and that his authorization would be needed. Subsequently, Fernando called Jose Jr. to get his permission to sell the trailer. There is no genuine dispute as to these facts. The uncontroverted testimony of all the witnesses demonstrates that Jose Jr. was the owner of the trailer and that no named insured ever owned the trailer at issue.

Defendant Rapp argues that Jose Sr., Fernando, and/or A Plus, rather than Jose Jr., owned the trailer prior to the accident. Primarily, Rapp contends that Jose Sr., Fernando, and A Plus "possessed, controlled, used, and maintained the trailer to the exclusion of others" (Opp. at 18). The only specific facts Rapp can point to that support this contention, however, are that the trailer sat on the A Plus lot for several years and that Fernando filled the tires every six months. Rapp also contends that because Jose Jr. gave Fernando authority to negotiate on his behalf, told him how much he paid for it, and said "[w]ell, it cost me this much, but – but – but do whatever you want to do with it," that Fernando somehow owned the trailer (Defendant's Exh. 3; Fernando Dep. at 62). Lastly, Rapp points out that although Jose Jr. told Fernando to give the proceeds from the trailer sale to Jose Jr.'s mother, Fernando instead deposited the money into his own bank account.

These points do not create a genuine dispute of material fact as to ownership. Every witness testified that Jose Jr. owned the trailer, and Rapp's assertions are perfectly consistent

6

with Jose Jr.'s ownership. Rapp raises nothing to contradict each deponent's testimony that Jose Jr. owned the trailer and merely stored it on the A Plus lot.

Rapp relies on several California Court of Appeal decisions to support her argument that Jose Sr., Fernando, and/or A Plus owned the trailer. Each of these decisions, however, is distinguishable from our case. *First*, Rapp cites *Everly v. Creech*, 139 Cal. App. 2d 651 (Cal. Ct. App. 1956). There, the issue was whether sufficient evidence had been presented at trial such that it could be found that the appellant owned a 1936 Ford for the purposes of determining insurance coverage. Based on Everly's regular use of the Ford at issue, that it had a sticker with his name on the windshield, that he had the Ford repaired several times at his own expense, that he told several witnesses that he had purchased the Ford from his girlfriend, and that he asserted himself that he had purchased it several months before the accident at issue, the court found sufficient evidence that he owned the vehicle. *Id.* at 656–57. In *Everly*, the insured testified that he purchased the vehicle at issue and witnesses corroborated that testimony. No such facts exist in our case, where the insureds have explicitly testified that they did not own the vehicle at issue and disclaimed coverage.

*Second*, Rapp relies on *Savnik v. Hall*, 74 Cal. App. 4th 733 (Cal. Ct. App. 1999), which affirmed a jury verdict that the plaintiff was not the owner of the vehicle involved in an accident. There, a car, which the plaintiff never drove, had been co-registered in her name without her knowledge. As this happened to be the only fact tying plaintiff to the car in question, *Savnik* affirmed the jury verdict that the plaintiff did not own the vehicle. In discussing the definition of "owner," *Savnik* described the incidents of ownership as including "dominion, control, right, interest, and title." *Id.* at 740. From this general quotation, Rapp argues that Jose Sr., Fernando, and/or A Plus "had all the incidents of ownership (save paper title, which does not exist here)" (Opp. at 11). Not so. *Savnik* is inapplicable to our case for several reasons, primarily the different procedural posture and the fact that *Savnik* found that the plaintiff did *not* own the car in question. Moreover, even taking the general quotation Rapp relies on, there is no evidence in our case that Jose Sr., Fernando, and/or A Plus had all the incidents of ownership. Importantly,

7

they did not have the right to dispose of it at their pleasure, as demonstrated by Fernando's need to call Jose Jr. for authorization before selling it.

*Third*, Rapp relies on *Kaley v. Catalina Yachts*, 187 Cal. App. 3d 1187 (Cal. Ct. App. 1986). Again, this decision involved a post-trial appeal of a jury verdict. The issue in *Kaley* surrounded whether a truck involved in an accident had been owned by Catalina Yachts. At trial, Catalina workers testified that their supervisors had told them that Catalina owned their own trucks, that employees had registered the trucks for permits in Catalina's name, that the trucks had a Catalina logo on them, and that Catalina issued the truck drivers credit cards. *Kaley* found that these facts constituted sufficient evidence such that a reasonable jury could find that Catalina owned the truck at issue. These facts demonstrating Catalina's ownership go far beyond the facts tying Jose Sr., Fernando, and/or A Plus to the trailer in our case. From *Kaley*, Rapp selectively plucks the line stating: "Ownership is a question of fact to be determined by a jury under appropriate instructions of law." *Id*. at 1198. This statement assumes, however, that there is a genuine dispute of fact for the jury to determine regarding ownership. Here, no such genuine dispute exists.

Lastly, Rapp attacks the credibility of the witnesses (Roberson, Jose Sr., Fernando, and Jose Jr.) and states that their testimony is "conclusory, self-serving, and unreliable" (Opp. at 2). Rapp argues that Jose Jr. is unreliable because he had been in the United States illegally and had a felony drug conviction in his past. She also baldly contends that Jose Sr. and Fernando had an incentive to disclaim ownership of the trailer, but she does not explain this incentive in any detail.

These credibility contentions are insufficient to defeat summary judgment. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

So too here. For the reasons stated above, there is no genuine dispute of material fact as to whether any named insured on the Titan policy owned the trailer at issue. They did not. The

summary judgment record clearly establishes, as every witness testified, that Jose Jr. owned the trailer and merely stored it at the A Plus lot. Defendant Rapp has not put forth any evidence sufficient to create a genuine issue of material fact as to this issue. At oral argument, Rapp focused on the sale of the trailer to Roberson, pointing out that no money changed hands before the accident and that the California Vehicle Code requires that a trailer be registered before ownership can officially transfer. Because this order holds that no named insured owned the trailer at any point, however, it need not reach the question of whether ownership of the trailer had transferred to Roberson when the accident itself occurred. To the extent stated herein, plaintiff's motion for summary judgment is **GRANTED**.

## DEFENDANT'S EVIDENTIARY OBJECTIONS

In her opposition to the summary judgment motion, defendant Rapp asserted five objections to the deposition testimony contained in plaintiff's exhibits. This order does not rely on the testimony contained in defendant's objections 1–2 or 4–5 and they are thus **OVERRULED AS MOOT**. Rapp's third objection relates to the following testimony from Fernando's deposition (Defendant's Exh. 2; Fernando Dep. at 7):

> Q. You're familiar with the fact that in August of 2012, a woman by the name of Katrina Rapp was injured by a trailer that you owned at some point?
>
> A. Yes. But no, the trailer wasn't really owned by me.
>
> Q. Okay .
>
> A. It was actually my brother's trailer.
>
> Q. Who is your brother?
>
> A. Jose Hermosillo, Jr., basically.

Rapp argues that Fernando lacked proper foundation to testify that Jose Jr. owned the trailer. Not so. Fernando testified that he was at A Plus when Jose Jr.'s friend dropped the trailer off and had discussions with Jose Jr. about his ownership of the trailer, specifically in response to the proposed sale. Rapp's objection to this testimony is **OVERRULED**.

9

**CONCLUSION**

For the reasons stated above and to the extent stated herein, plaintiff's motion for summary judgment is **GRANTED**. Judgment shall be entered separately.

**IT IS SO ORDERED.**

Dated: September 17, 2015.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE